**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALLEN HAMMLER, | Case No.: 1:19-cv-00373-AWI-SAB (PC) |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO FILE A LATE REPLY |
| v. | (ECF No. 118) |
| CLARK, et.al., | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR |
| Defendants. | SUMMARY JUDGMENT |
| | (ECF No. 116) |

Plaintiff Allen Hammler is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's motion for summary judgment, filed January 22, 2021.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Gamboa, Peterson, Garza, Saucedo, Uhlik, and Clark for violation of the First Amendment right to free exercise of religion.

On April 7, 2020, Defendants filed an answer to Plaintiff's complaint.  On April 8, 2020, the Court issued the discovery and scheduling order.

On January 22, 2021, Plaintiff filed the instant motion for summary judgment.  (ECF No. 116.)  Defendants filed an opposition on February 12, 2021.  (ECF Nos. 117, 118.)

On March 22, 2021, Plaintiff filed a motion to file a late reply, along with a separate reply.[1]  (ECF Nos. 119, 120.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).  It need only draw inferences, however, where there is "evidence in the record...from which a reasonable inference...may be drawn"; the court need not entertain inferences that are unsupported by fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986).  But, "if

---

[1] Plaintiff submits that he was unable to timely file his reply because his mental health treatment was elevated and he was placed on suicide watch.  The Court finds good cause to deem Plaintiff's reply timely filed for consideration in ruling on the instant motion.  (ECF Nos. 119, 120.)

direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

In arriving at this Findings and Recommendation, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.    Summary of Plaintiff's Allegations

Plaintiff alleges that he follows a Rastafarian faith which prohibits the consumption of raw meat. Plaintiff is a participant in CDCR's religious diet program and receives kosher meals.  Plaintiff claims that he received raw meat in his meals on several occasions at Corcoran and has alerted Defendants to the problem, but he continues to receive raw meat in his meals.  Plaintiff contends that because he is being provided only raw meat, which he is prohibited from eating due to his religious beliefs, he is unable to eat and is becoming sick and weak.

### B.    Analysis of Plaintiff's Motion

Plaintiff contends that the undisputed evidence demonstrates that he was repeatedly served raw meat from July 25, 2018 to January 3, 2019, and he is entitled to judgment as a matter of law.

In opposition, Defendants argue that Plaintiff has failed to establish that it is undisputed that he has received raw meats in his meals, and the evidence cited by Plaintiff shows nothing more than a de minimis burden on his ability to practice his religion.

In reply, Plaintiff contends that he did not receive Kosher meals made by an outside distributor until January 9, 2019, and the meals served prior to that date were plated inside the prison facility. Plaintiff argues that Defendants have failed address the relevant time period and he is therefore entitled to judgment as a matter of law.

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1997)).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  Courts apply a four-part test to balance the inmate's free exercise right against the state's legitimate penological interests to determine if a regulation is reasonable and constitutional. Turner, 482 U.S. at 89.

The Ninth Circuit has recently explained:

> A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion.  A substantial burden…places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs….  To ensure that courts afford appropriate deference to prison officials, the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.  The challenged conduct is valid if it is reasonably related to legitimate penological interests.

Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015) (internal quotations and citations omitted).  "It was well established in 2007, and remains so today, that government action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Id. at 1033.

"Inmates [ ] have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987).  However, this right is balanced against budgetary and administrative concerns of the prison. Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993).  "To ensure that courts afford appropriate deference to prison officials, the Supreme Court has directed that alleged infringements of prisoners' free exercise rights

be judged under a reasonableness test less restrictive than that ordinarily applied to alleged

infringements of fundamental constitutional rights. The challenged conduct is valid if it is reasonably

related to legitimate penological interests." <u>Jones</u>, 791 F.3d at 1032 (citations and internal quotation

marks omitted).

Here, it is undisputed that Plaintiff is of the Rastafarian faith and adheres to dietary laws that

precludes his eating of raw meats.  (Pl.'s Stmt. of Undisp. Facts No. 1, ECF No. 116 at 43.)  As stated

above, Plaintiff contends that he has been prevented from freely exercising his religion because he has

been continually and intentionally provided raw meat in his kosher meals, which he is precluded from

eating based on the dietary requirements of his religious beliefs.  In support of his motion, Plaintiff

submits his own declaration and several CDCR Form 22 requests relating to complaints that the meat

in his Kosher meals was served raw.  (Mot. at 14-17, 48-49.)

Defendant J. Uhlik (supervising cook at Corcoran State Prison since 2012) filed a declaration

concurrently with Defendants' opposition to Plaintiff's May 13, 2020, motion for summary judgment,

who is familiar with Plaintiff's dietary needs and with the process by which the food is prepared for

inmates at the institution.  (Uhlik Decl. ¶¶ 2-10, ECF No. 91-2.)  More specifically, J. Uhlik declares

as follows:

> Kosher meals are received by the kitchen fully pre-cooked and sealed in containers from a
> distribution company.  Each individual meal has instructions for reheating on the packaging.
> The instructions are followed for each meal, which involves placing the meals in a "retherm"
> oven where they are heated to at least 165 degrees Fahrenheit and held at least 135 to 140
> degrees Fahrenheit until they are ready to be distributed to the inmates in each particular
> housing unit.
>
> The kitchen at Corcoran prepares meals for over 1,500 inmates at a time.  Due to the large
> quantity of meals provided, it is not feasible for kitchen staff to individually prepare each
> inmate's meals.  It would be impossible to provide food to all 1,500 inmates if staff were
> required to do so.
>
> In [Plaintiff's] housing unit, the Administrative Segregation Unit (ASU), there are twenty-
> seven inmates who are authorized to get kosher meals.  The kitchen prepares twenty-seven
> kosher meals at the same time, and when they are ready to be distributed to those inmates, they
> are loaded into a cart and brought over to ASU.  The meals are not individually marked with
> the names of inmates, and they are randomly distributed to the inmates who are authorized to
> receive kosher meals.

Inmates in ASU are the first group of inmates to be served meals at CSP-Cor and the kitchen remains open with a cook on duty for approximately two hours after meals are served.  After the kitchen is closed and the cook is no longer on duty, there is food available for correctional officers to provide to inmates twenty-four hours a day.

If an inmate has complaints about the preparation or condition of the food in the meal they are provided, he can alert the floor officers in his housing unit and the kitchen will be contacted to provide a replacement if the kitchen is still open at the time the complaint is made.  I have always made reasonable efforts to replace a faulty meal or find an equivalent substitute when an inmate reports a problem with the meal.

[Plaintiff] has never been served raw meat in a meal from the kitchen, because all the meals that come to the kitchen come fully cooked from the distribution companies.  The kitchen does not prepare or handle raw meat in any of its meal preparation.  Heating the meals up to 190 degrees Fahrenheit ensures that all the meat inside is cooked.

[Plaintiff] has complained about the condition of his meals in the past and he has been offered replacements.  I have personally provided [Plaintiff] with replacement meals, as recently as May of 2020.

(Uhlik Decl. ¶¶ 5-10.)  Thus, based on Uhlik's declaration, Defendants have submitted evidence to contradict the fact that he received raw meat and submit that the meals arrive at the institution cooked and packaged, and staff merely reheats the meals according to the packaging instructions.  In addition, Defendants submit evidence that Plaintiff was provided replacement meals in response to his complaints.  Furthermore, Defendants' previously submitted evidence in the form of CDCR 114-A logs which document daily activities in Plaintiff's housing unit indicating only one instance of Plaintiff refusing a meal and medical records which demonstrate Plaintiff has maintained a stable, normal weight range for an adult of his height.  (ECF No. 74, Exs. A & B.)  Although Plaintiff submits that the meat was served raw and that the food was not prepared by an outside distributor until January 9, 2019, he has not submitted undisputed evidence to support his contentions.  Therefore, based on the evidence presented, Plaintiff has not established that there is no genuine dispute that he is being served raw meat, and he has failed to establish that he is entitled to judgment as a matter of law.

## IV.

## ORDER AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that Plaintiff's motion to file a late reply is granted.

Further, it is HEREBY RECOMMENDED that Plaintiff's motion for summary judgment, filed on January 22, 2021, be denied.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **March 25, 2021**

_____
UNITED STATES MAGISTRATE JUDGE