UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CLARK, et.al.,<br><br>　　　　Defendants. | Case No.: 1:19-cv-00373-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 123) |

Plaintiff Allen Hammler is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed April 16, 2021.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Gamboa, Peterson, Garza, Saucedo, Uhlik, and Clark for violation of the First Amendment right to free exercise of religion.

On April 7, 2020, Defendants filed an answer to Plaintiff's complaint. On April 8, 2020, the Court issued the discovery and scheduling order.

On April 16, 2021, Defendants filed the instant motion for summary judgment. Although Plaintiff filed an opposition on October 29, 2021, and Defendants filed a reply on was granted two

1

extensions of time, he has failed to file an opposition and the time to do so has passed. Accordingly, Defendants' motion is deemed submitted for review. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted). It need only draw inferences, however, where there is "evidence in the record...from which a reasonable inference...may be drawn"; the court need not entertain inferences that are unsupported by fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). But, "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

In arriving at this Findings and Recommendation, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and

responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.
## DISCUSSION

### A. Summary of Plaintiff's Allegations

Plaintiff alleges that he follows a Rastafarian faith which prohibits the consumption of raw meat. Plaintiff is a participant in CDCR's religious diet program and receives kosher meals.  Plaintiff claims that he received raw meat in his meals on several occasions at Corcoran and has alerted Defendants to the problem, but he continues to receive raw meat in his meals.  Plaintiff contends that because he is being provided only raw meat, which he is prohibited from eating due to his religious beliefs, he is unable to eat and is becoming sick and weak.

### B. Statement of Undisputed Facts[1]

1. Plaintiff is an inmate incarcerated by the California Department of Corrections and Rehabilitation at California State Prison, Corcoran (Corcoran) at all times relevant to the alleged events in this case.  (First Am. Compl. (FAC) at 1, 5; ECF No. 81.)

2. Plaintiff brings this action under 42 U.S.C. § 1983, claiming that he has received raw meat in kosher dinner meals, which he is prohibited from eating due to his religious beliefs.  (FAC at 3, 5; Pl. Dep. at 53:19-54:3, 57:8-15.)

3. Plaintiff claims to follow an "unorthodox" version of the Rastafarian faith, which he believes prohibits him from eating raw meat, and has been authorized to receive kosher meals at Corcoran.  (Pl. Dep. at 38:23-39:5, 40:1-12, 43:8-12, 57:8-15, 102:2-7; Uhlik Decl. ¶ 3.)

4. Plaintiff practices his religion by "having the Word preached to me," which Plaintiff

---

[1] Hereinafter referred to as "UF."

3

does every day, multiple times a day, by watching evangelical television programs on a television he has in his cell, and by praying multiple times a day, in addition to not eating raw meat. (Pl. Dep. at 98:7-99:7, 99:17-100:8.)

5. Plaintiff has never worked in a prison kitchen at any institution at CDCR, has never been inside the kitchen at Corcoran, has never observed the process by which food is prepared at Corcoran, and has never personally observed the condition of kosher meals when they arrive at Corcoran. (Pl. Dep. at 21:15-22:10, 23:8-24:1, 154:25-155:11.)

6. Corcoran does not and has never prepared kosher meals from raw meat; instead, the meals arrive precooked and prepackaged from a distribution company, and kitchen staff at Corcoran reheats the meals to 190 degrees in a "retherm" oven, where they are held at temperature until they are ready to be served. (Uhlik Decl. ¶¶ 5-8; Clark Decl. ¶ 4; Gamboa Decl. ¶ 6.)

7. The kitchen at Corcoran prepares the kosher meals for all kosher-approved inmates in Plaintiff's housing unit at the same time, and in the same manner; and when they are ready to be distributed to those inmates, they are loaded into a cart and brought to the unit, where they are randomly distributed to the approved inmates. (Uhlik Decl. ¶ 10.)

8. If an inmate at Corcoran informs a housing-unit officer of complaints about his meal, the officer will notify the kitchen and provide the inmate with a replacement meal. (Uhlik Decl. ¶¶ 12, 14; Peterson Decl. ¶ 3; Garza Decl. ¶ 3; Saucedo Decl. ¶ 3; Clark Decl. ¶ 5; Gamboa Decl. ¶ 7.)

9. Before receiving kosher inmate meals from a company called LaBruite in 2020, Corcoran received precooked, prepackaged kosher meals from ABC Ventures, LLC from 2014 through 2019. (Uhlik Decl. ¶¶ 7-8.)

10. Plaintiff specifically claims that on December 6, 2018, he told Defendants Garza, Peterson, and Saucedo that he received raw meat in his meals, and that on December 7, 2018, he told Defendants Clark and Gamboa that he received raw meat in his meals. (FAC at 5-6, 8; Pl. Dep. at 45:20-46:14.)

11. Defendants Clark and Gamboa do not have any role in the preparation or service of religious-diet meals, nor do they conduct investigations into inmate claims. Rather, they delegate kosher food service responsibility to qualified staff and rely upon the investigations and reports of

4

staff members in reviewing inmate grievances and disciplinary reports. (Clark Decl. ¶¶ 3-7; Gamboa Decl. ¶¶ 3-5; Pl. Dep. at 120:25-121:12, 122:24-123:18.)

12. Defendant Gamboa reviewed inmate-appeal and inmate-disciplinary findings from other Corcoran staff members, but was not personally involved in any of the investigations that led to the findings, and did not interview Plaintiff directly. (Gamboa Decl. ¶ 8.)

13. Defendants Peterson, Saucedo, and Garza are custody staff, and do not have any authority or control over the preparation of food at Corcoran; they can only offer replacement meals and inform kitchen staff of any issues that arise. (Uhlik Decl. ¶ 12; Peterson Decl. ¶¶ 3-4, 6; Saucedo Decl. ¶¶ 3, 7; Garza Decl. ¶ 5; Pl. Dep. at 135:1-17, 136:25-137:5, 138:24-139:6.)

14. Defendant Peterson was not working in Plaintiff's housing unit at the time of the alleged events, having been promoted in 2015, and had no control over food-service issues. (Peterson Decl. ¶¶ 4-5, 7.)

15. Defendant Garza did not work regularly in Plaintiff's housing unit at the time of the alleged events, but occasionally covered shifts there, and Plaintiff only told Garza once about issues with kosher meals. (Garza Decl. ¶¶ 3-4, 6.)

16. Defendant Saucedo was involved in disciplinary proceedings for Plaintiff that did not pertain to any issues Plaintiff had with kosher meals. (Saucedo Decl. ¶¶ 4-6.)

17. Defendant Uhlik personally provided Plaintiff with a replacement meal when Plaintiff complained about the condition of his meal. (Uhlik Decl. ¶ 12; Pl. Dep. at 140:13-24.)

**C.     Analysis of Defendants' Motion**

Defendants argue that Plaintiff's ability to practice his religion is not substantially burdened by any actions of any Defendant, and Plaintiff's claim that he is continuously receiving raw meat in his kosher dinners is insufficient to raise a genuine dispute of material fact. Defendants Garza, Peterson, Saucedo, Gamboa and Clark also argue that they did not have any involvement in, control over, or causal connection to, the preparation and distribution of kosher meals at Corcoran.

Prisoners do not forfeit all their constitutional protections simply because they are incarcerated. Bell v. Wolfish, 441 U.S. 520, 545 (1979); Shakur v. Schriro, 514 F.3d 878, 883–84 (9th Cir. 2008). Inmates retain the protections of the First Amendment to the United States Constitution, including its

5

command that laws may not prohibit free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The United States Court of Appeals for the Ninth Circuit has held that the First Amendment extends to inmates' right to be provided with food that sustains good health and that satisfies the dietary commands of their faith. See Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987). Denial of food complying with the tenants of inmates' faith may well substantially burden inmates' ability to practice their religion. See, e.g., McElyea, 833 F.3d at 198; Shakur, 514 F.3d at 885.

Lawful incarceration, however, permissibly brings with limitations of many rights and privileges, which is a circumstance justified by considerations underlying the penal system. See Shakur, 514 F.3d at 884. Prisoners' free exercise of religion is limited by institutional objectives and the confinement attendant to incarceration. Hartmann v. Cal. Dep't of Corrs. and Rehabilitation, 707 F.3d 114, 1122 (9th Cir. 2013); see also Turner v. Safley, 482 U.S. 78, 89 (1987) ("[W]hen a [a prison official's conduct] impinges on inmates' constitutional rights, the [conduct] is valid if it is reasonably related to legitimate penological interests.").

To implicate the Free Exercise Clause of the First Amendment, prisoners must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see Shakur, 514 F.3d 884-85 (reasoning finding that the sincerity test in Malik determines whether the Free Exercise Clause applies). If the inmate makes this initial showing, he must also establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Jones, 791 F.3d at 1031–32; Shakur, 514 F.3d at 884–85. A substantial burden is more than an inconvenience to religious practice and must tend to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an inmate to alter his behavior and to violate his beliefs. Jones, 791 F.3d at 1031–32. A regulation or burden upon the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. See Shakur, 514 F.3d 884-85; see also Turner, 482 U.S. at 89.

Assuming the validity of Plaintiff's allegations in his complaint that he specifically advised Defendants Garza, Peterson, Saucedo, Clark and Gamboa of the alleged raw meals, the undisputed

evidence demonstrates nothing more than a de minimis burden on his ability to practice his religion. It is undisputed that Plaintiff has never worked in a prison kitchen at any institution at CDCR, has never been inside the kitchen at Corcoran, has never observed the process by which food is prepared at Corcoran, and has never personally observed the condition of kosher meals when they arrive at Corcoran. (UF 5.) Corcoran does not and has never prepared kosher meals from raw meat; instead, the meals arrive precooked and prepackaged from a distribution company, and kitchen staff at Corcoran reheats the meals to 190 degrees in a "retherm" oven, where they are held at temperature until they are ready to be served. (UF 6.) The kitchen at Corcoran prepares the kosher meals for all kosher-approved inmates in Plaintiff's housing unit at the same time, and in the same manner; and when they are ready to be distributed to those inmates, they are loaded into a cart and brought to the unit, where they are randomly distributed to the approved inmates. (UF 7.) If an inmate at Corcoran informs a housing-unit officer of complaints about his meal, the officer will notify the kitchen and provide the inmate with a replacement meal. (UF 8.)

Before receiving kosher inmate meals from a company called LaBruite in 2020, Corcoran received precooked, prepackaged kosher meals from ABC Ventures, LLC from 2014 through 2019. (UF 9.) Plaintiff specifically claims that on December 6, 2018, he told Defendants Garza, Peterson, and Saucedo that he received raw meat in his meals, and that on December 7, 2018, he told Defendants Clark and Gamboa that he received raw meat in his meals. (UF 10.) However, Plaintiff has no personal knowledge about the process by which food is prepared at Corcoran, as he has never worked in any prison kitchen, has never been inside the kitchen at Corcoran, and has never personally observed the conditions of kosher meals when they arrive at Corcoran. (UF 5.) Thus, Plaintiff cannot offer competent evidence to create a genuine dispute of fact as to whether the meals arrive fully cooked and prepackaged. Fed. R. Evid. 701. Accordingly, no reasonable jury could find that the meat is actually raw and return a verdict for Plaintiff. Furthermore, there is insufficient evidence to establish that Plaintiff's ability to practice his religion was substantially burdened by the actions of Defendants. The CDCR 22 forms attached to Plaintiff's first amended complaint demonstrate only approximately eight instances out of several hundred meals where he believes the meat in his kosher meals was raw. (FAC at 14, 15, 19, 22, 24, 25, 27, 28, ECF No. 86.) In addition,

the documents presented in Plaintiff's "Notice of Lodging" (ECF No. 116) show that he is only complaining of approximately sixteen instances of being served alleged raw meat over the course of more than two years.  (ECF No. 116 at 62, 63, 64, 66, 67, 68. 80, 71, 75, 76, 80, 84, 86, 87, 88, 89.)  Each of the alleged incidents was a dinner meal, and even assuming Plaintiff could prove he occasionally received raw meats, he was still provided with two other meals on each of the seventeen days which complied with his religious diet.  CDCR records demonstrate that Plaintiff's weight was stable within a healthy adult range for his height and weight during the relevant time frame.  (ECF No. 74, Exs. A & B.)  Moreover, during the alleged time frame, Plaintiff has been free to practice his religious beliefs in alternative forms on a daily basis, and even if he was occasionally served raw meat, the burden on his ability to practice was not substantial.  See Holt v. Hobbs, 574 U.S. 352, 361 (2015) ("[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. (citations omitted)).  Plaintiff claims to follow an "unorthodox" version of the Rastafarian faith, which he believes prohibits him from eating raw meat, and has been authorized to receive kosher meals at Corcoran.  (UF 3.)  Plaintiff practices his religion by "having the Word preached to me," which Plaintiff does every day, multiple times a day, by watching evangelical television programs on a television he has in his cell, and by praying multiple times a day, in addition to not eating raw meat.  (UF 4.)  There is simply no evidence that any Defendant has interfered with Plaintiff's ability to heard the Word preached or to pray.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-352 (1987) (holding that prison regulations did not violate policy where inmate had other means to practice his religion); Williams v. Morton, 343 F.3d 212, 219 (9th Cir. 2003) (affirming summary judgment for defendants because denial of Halal meat meals did not substantially burden Muslim inmates' free exercise where they were given other religious accommodations, including onsite Imam, ability to pray daily, ability to observe religious holidays, and ability to attend weekly prayer service).  Rather, by his own admission, he does so every day, multiple times a day without any issue. (Id.)  Accordingly, Defendants' motion for summary judgment should be granted.

///

///

///

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

2. Judgment be entered in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 27, 2022**

UNITED STATES MAGISTRATE JUDGE